1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  AARON E. DE LEEST, #216832
   adeleest@marshackhays.com
3  CHAD V. HAES, #267221
   chaes@marshackhays.com
4  MARSHACK HAYS WOOD LLP
   870 Roosevelt
5  Irvine, California 92620
   Telephone: (949) 333-7777
6  Facsimile: (949) 333-7778

7  Attorneys for Richard A. Marshack,
   Plaintiff and Trustee of the LPG Liquidation Trust
8

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | Adv. No. |
| | COMPLAINT FOR: |
| RICHARD A. MARSHACK, Trustee of the LPG Liquidation Trust, | (1) AVOIDANCE, RECOVERY, AND PRESERVATION OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(A), 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07]; |
| Plaintiff, | |
| v. | |
| LONGCLAW, INC., a Florida Corporation; and DOES 1 through 20, inclusive, | (2) AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(B); 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07]; AND |
| Defendant(s). | |
| | (3) DISALLOWANCE OF CLAIMS HELD BY DEFENDANTS [11 U.S.C. § 502(d)] |
| | [STATUS CONFERENCE TO BE SET BY COURT] |

/ / /

/ / /

/ / /

/ / /

1
COMPLAINT

4903-7445-3866,v.1

Richard A. Marshack, solely in his capacity as Trustee of the LPG Liquidation Trust, files this complaint against Longclaw, Inc., a Florida Corporation ("Defendant") and Does 1 through 20, inclusive, (collectively, "Doe Defendants"), and alleges as follows:

**Statement of the Case**

1. A bankruptcy trustee can avoid a debtor's fraudulent transfers of property. In this case, the Trustee alleges that Debtor's insiders and associates ("LPG Insiders") established one or more entities, including Validation Partners LLC ("Validation Partners"). The LPG Insiders then caused monies belonging to Debtor to be deposited in one or more accounts nominally titled in the name of Validation Partners. Such funds were not "transferred," as that term is defined in 11 U.S.C. § 101(54), to Validation Partners. Instead, the beneficial and equitable ownership of the funds always remained Debtor's property.

2. The funds deposited in Validation Partners accounts were intentionally raised by Tony Diab from investors and disclosed to investors to be raised solely for the benefit of the Debtor. The alleged benefit was twofold: (1) to reduce Debtor liability to previous purchasers of Debtor's accounts receivable by buying back accounts receivable from fee-sharing cappers; and (2) to bring accounts receivable consumer client files back to Debtor for them to be serviced internally for a continued revenue stream, thus funding Debtor's operations. The Trustee alleges that Validation Partners did not have funds in its accounts that were not Debtor property.

3. The LPG Insiders took these actions to keep Debtor's cash outside the reach of creditors. At least $325,000 of such funds belonging to Debtor were then transferred to Defendant. The funds transferred to Defendant from the accounts nominally titled with Validation Partners are collectively referred to as the "Transfer." Trustee alleges that the Transfer was then subsequently transferred by Defendant to one or more of the Doe Defendants. The Transfer to Defendant occurred during the four-year-period prior to the petition date.

4. Under these facts, the Trustee can avoid the Transfer and recover from Defendant as the "initial" transferee of such transfer and/or from Doe Defendants as "subsequent" transferees who did not take in good faith, for value, and without knowledge of the avoidability of such transfer.

/ / /

**Statement of Jurisdiction and Venue**

5. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

6. Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the Estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

7. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

8. Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

**Parties**

9. The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

10. On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

11. Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Debtor's bankruptcy estate ("Estate").

Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust, which now owns all of the litigation claims, including the Estate's avoidance actions.

12. Plaintiff alleges that, at all relevant times, Defendant was a domestic corporation authorized to do business in the state of California and formed and existing under the laws of the State of Florida. Defendant's address and/or principal place of business is 801 US Highway 1, North Palm Beach, FL 33408.

13. Plaintiff is ignorant of the true names and capacities of the Doe Defendants and, therefore, sues said defendants under such fictitious names. Plaintiff will amend this Complaint to reflect the true names and capacities of such defendant(s) when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named individuals and/or entities are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages by their conduct. Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named defendants may constitute individuals, unknown trusts, partnerships, related entities, owners, principals, shareholders, insiders, alter egos, co-conspirators, and aiders and abettors that: (a) received transfers from Debtor and/or Validation Partners as an initial, immediate, or mediate transferee; (b) received transfers from Defendant as a mediate transferee; (c) directed or controlled Defendant's conduct and, as such, were responsible in some manner for the occurrences alleged herein; and/or (c) were used to shield Debtor's assets from collection, levy or execution, and to otherwise, hinder, delay and defraud the Debtor and its creditors.

## General Allegations

### A. The Bankruptcy Case

14. Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 50,000 clients nationwide.

15. Tony Diab ("Mr. Diab") owned, operated, dominated and controlled Debtor.

16. On May 8, 2023, the Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that the Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v.*

*Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

17. On February 19, 2025, Trustee filed a Motion for an Order Extending the Estate's Time to File Actions Governed by 11 U.S.C. §§ 108, 546(a), and 549(d). On April 9, 2025, the Court entered an order extending the "statute of limitations for Trustee to bring actions under 11 U.S.C. §§ 108, 546(a); and 549(d) … up to and through September 19, 2025."

### B.    Fraudulent Entities

18. The consumers that retained Debtor to represent them would pay over a period of time via monthly ACH debits from their bank accounts. These monthly payments were intended to cover all legal services provided by Debtor to those consumers. These funds should have been deposited into an attorney-client IOLTA account until earned. Instead, these funds were never deposited into trust and were diverted to various sham and non-debtor entities, insiders, affiliates, marketing companies, co-conspirators, or otherwise spent on non-business, unnecessary, and lavish personal expenses which ultimately rendered the Debtor insolvent.

19. The LPG Insiders also diverted investor funds raised by Mr. Diab allegedly for Debtor's benefit. Specifically, the funds deposited in Validation Partners accounts were intentionally raised by Mr. Diab: (1) to reduce Debtor liability to previous purchasers of Debtor's accounts receivable by buying back accounts receivable from fee-sharing cappers; and (2) to bring accounts receivable consumer client files back to Debtor for them to be serviced internally for a continued revenue stream, thus funding Debtor's operations.

20. Mr. Diab has admitted, under penalty of perjury, that he operated the Debtor as a criminal enterprise, specifically, a Ponzi scheme. The Debtor's insolvency led to Mr. Diab and the Debtor to improperly selling its stream of retainer payments, sometimes multiple times over, to "investors" in the scheme.

21. After the Debtor's scheme began to crumble, as all Ponzi schemes inevitably must, and the Debtor's creditors began to demand payment from the Debtor, the LPG Insiders concocted

///

22. and enacted a plan to keep Debtor's interests in property outside the reach of creditors. Specifically, the LPG Insiders created one or more sham entities to hold Debtor's property.

23. These sham entities include but are not limited to Validation Partners, Vulcan Consulting Group LLC, Coast Processing LLC dba LPG, Oakstone Law Group PC, Greyson Law Center PC, Maverick Management Group, LLC, and Prime Logix, LLC. Several of the sham entities purported to operate as debt relief law firms.

24. After the creation of these sham entities, many of Debtor's consumer clients were unlawfully "transferred" to one of the sham entities to receive legal services, which also led to related ACH receivables being improperly deposited into the accounts of such sham entities.

25. Other money that came into the sham entity accounts were also all related to the Debtor's client files. As Mr. Diab would obtain loans to or investments in Debtor, such funds would also be deposited in these accounts. Such loans owed by, and investments in the Debtor, were paid from the funds held by the sham entities.

26. As was the case generally with all the sham entities, Mr. Diab used the bank account of Validation Partners as one of many bank accounts to hold Debtor money derived from ACH pulls drawn from the accounts of Debtor's consumer clients and/or from investors who were told and who believed that they were investing in Debtor.

27. In the year prior to bankruptcy, the Debtor's Statements of Financial Affairs evidence that it received revenues totaling approximately $155 million in monthly ACH payments from its consumer clients.

28. Under applicable state and federal laws, ACH pulls from a consumer's bank account cannot occur until the party initiating the payments obtains the consumer's express written consent.

29. With respect to the ACH pulls, the consumer clients only consented to the Debtor initiating the payments from their accounts.

30. With respect to the ACH pulls, the funds were derived from Debtor's consumer clients that never consented to any law firm other than the Debtor representing them and from investors.

///

31. At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).[1]

**C.     Ponzi Scheme**

32. Mr. Diab's operation of the Debtor as a Ponzi scheme manifested itself in several ways involving the Debtor's stream of ACH receivables from its consumer clients and the funds loaned to and invested in Debtor by third party lenders and investors.

33. As noted above, Mr. Diab used the sham entities he controlled, including Validation Partners, to keep millions of dollars of Debtor's money away from its creditors. The use of the sham entities also permitted him to operate, without oversight or detection, and to avoid payment disputes and complications.

34. Third parties that believed they were loaning money to the Debtor and/or investing in in the Debtor and its streams of receivables were paid from the funds paid by the Debtor's consumer clients and other investors so that they would be unaware of the Debtor's insolvency and to perpetuate the Ponzi scheme. Many of these "lenders" actually served as "investors," hoping for very high returns before "the music stopped."

35. The Debtor also paid certain outside attorneys for services rendered to old clients with the funds obtained from new clients, further perpetuating and facilitating the Ponzi scheme.

36. The Ponzi scheme also entailed the Debtor incurring debt and obligations that were virtually impossible to repay. Because the Debtor and its marketing affiliates received only

---

[1] To the extent the LPG Insiders are adjudicated to be initial transferees of the Transfers, the omission the LPG Insiders in this Complaint is not fatal to the fraudulent transfer claims set forth herein. *See Erickson v. Leonard* (*In re AVI, Inc*.), 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *IBT Intern., Inc. v. Northern* (*In re Int'l Admin. Servs., Inc*,), 408 F.3d 689, 708 (11th Cir. 2005) ("Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Leslie v. Ace Gallery N.Y. Corp.* (*In re Art & Architecture Books of the 21st Century*), 2021 Bankr. LEXIS 3637, *98 (Bankr. C.D. Cal. 2022) ("The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550."); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary.").

4903-7445-3866,v.1

Case 8:25-ap-01287-SC    Doc 1    Filed 09/18/25    Entered 09/18/25 01:05:42    Desc
Main Document    Page 8 of 20
Case 8:25-ap-01287-SC    Doc 1    Filed 09/18/25    Entered 09/18/25 01:05:42    Desc
Main Document    Page 8 of 20

incremental payments over time from Debtor's consumer clients, Debtor would sometimes purport to sell the future streams of payments made by its clients to raise additional cash. The same receivables were often-times bundled and sold multiple times over with no regard for the resulting repayment obligations incurred by the Debtor.

37.    The Debtor would also at times work with marketing affiliates who would get consumers that responded to advertisements to sign retainer agreements with the Debtor in exchange for a portion of the future payments.

38.    The Debtor also obtained money from investors and merchant cash advance lenders at usurious rates and objectively unreasonable terms.

39.    The Debtor knew it did not have the ability to repay its various creditors and, thus, the actions taken by the Debtor constituted a Ponzi scheme orchestrated for improper personal gain.

40.    This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

41.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

42.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme

///

are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

43. Based on the Ponzi Scheme presumption the Court can presume that the Debtor had the actual intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendants, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and fraudulent.

### D.  Prepetition Creditors and Lawsuits

44. Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

45. The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

46. At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

47. Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

48.     Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

### E.  Debtor's Insolvency

49.     Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest point, $17.9 million of assets in November 2021.

50.     Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

### F.  The Subject Transfer

51.     The Transfer was made to Defendant and/or the Doe Defendants during the four-year period prior to the Petition Date. The full extent of funds transferred will be proven at trial, but are in an amount not less than $325,000 (previously defined as the "Transfer") as set forth in the chart attached as **Exhibit 1.**

52.     Plaintiff alleges that Debtor was insolvent when the Transfer was made or became insolvent as a result of the Transfer.

53.     Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange for or in connection with the Transfer.

54.     Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Transfer or its value from Defendant and Doe Defendants as initial or subsequent transferees.

///

55. Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit of the Estate.

### G. Due Diligence

56. On July 29, 2025, Plaintiff caused a letter to be mailed to Defendant ("Letter") requesting documents and information to substantiate the Transfer, to assess the purpose of the Transfer, and to evaluate any potential defenses to Plaintiff's avoidance and recovery of the Transfer. Plaintiff received no response to the Letter.

57. Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

**First Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07**

**(Against all Defendants)**

58. Plaintiff incorporates by reference Paragraphs 1 through 56 and realleges these paragraphs as though set forth in full.

59. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

60. The Transfer was of property of Debtor.

61. The Transfer was made within four years of the Petition Date.

62. The Transfer was made with the actual intent to hinder, delay, or defraud Debtor's creditors.

63. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

64. Debtor had been sued or threatened with suit before the Transfer occurred.

65. Debtor incurred substantial debt shortly before or shortly after the Transfer occurred.

66. The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to sham entities.

67. Debtor actively concealed its beneficial interest in the Transfer and made the payments to Defendants with actual intent to hinder, delay, or defraud other creditors of the Debtor.

68. The LPG Insiders and Validation Partners, which held Debtor's funds, benefitted in part from the use of such funds improperly diverted away from Debtor and would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

69. Debtor received less than reasonable equivalent value of value in exchange for the Transfer. Defendant and/or Doe Defendants received at least $325,000 of property belonging to Debtor.

70. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

71. The Transfer was made partially for the benefit of an insider of Debtor. The detriment of the Transfer accrued to Debtor, and Debtor received no direct or indirect benefit.

72. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

73. Based on the foregoing, Plaintiff may avoid the Transfer pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

74. Based on the foregoing, Plaintiff may recover and preserve the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

/ / /

/ / /

/ / /

/ / /

/ / /

# Second Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer
## 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07
### (Against all Defendants)

75. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 and realleges these paragraphs as though set forth in full herein.

76. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

77. Debtor did not receive reasonably equivalent value in exchange for the funds diverted to Validation Partners.

78. Debtor did not receive reasonably equivalent value in exchange for the Transfer.

79. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

80. At the time the Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

81. At the time the Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

82. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

83. The LPG Insiders and Validation Partners, which held Debtor's funds, benefitted in part from the use of such funds improperly diverted away from Debtor and would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

84. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

///

85. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

86. Based on the foregoing, Plaintiff may avoid the Transfer pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

87. Based on the foregoing, Plaintiff may recover and preserve the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## Third Claim for Relief
## Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer
## 11 U.S.C. §§ 548(a)(1)(A), 550 & 551
## (Against all Defendants)

88. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 and realleges these paragraphs as though set forth in full herein.

89. The Transfer was made within two years of the Petition Date.

90. The Transfer was made to Defendants with the actual intent to hinder, delay, or defraud Debtor's creditors.

91. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

92. Debtor had been sued or threatened with suit before the Transfer occurred.

93. Debtor incurred substantial debt shortly before or shortly after the Transfer occurred.

94. The LPG Insiders caused Debtor to take the actions alleged herein, including the use of the sham entities to hold Debtor's funds, with the actual intent to hinder, delay, and defraud its creditors.

95. The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor by use of the sham entities.

96. The LPG Insiders actively concealed Debtor's assets by the use of the sham entities.

///

97. Validation Partners, which held Debtor's funds, would be considered insiders as that term is defined in 11 U.S.C. § 101(31).

98. Debtor received less than reasonably equivalent value in exchange for the Transfer totaling $325,000.

99. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

100. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

101. Based on the foregoing, Plaintiff may avoid the Transfer under 11 U.S.C. § 548(a)(1)(A).

102. Based on the foregoing, Plaintiff may recover and preserve the avoided transfer up to the amount of the Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

## Fourth Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 548(a)(1)(B), 550 & 551

## (Against all Defendants)

103. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 and realleges these paragraphs as though set forth in full herein.

104. The Transfer was made within two years before the Petition Date.

105. Debtor did not receive reasonably value in exchange for the Transfer.

106. The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfer.

107. When the Transfer occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

108. When the Transfer occurred, Debtor was about to incur debts that were beyond its ability to pay.

Case 8:25-ap-01287-SC    Doc 1    Filed 09/18/25    Entered 09/18/25 01:05:42    Desc
Main Document    Page 16 of 20

109. The Transfer was made for the benefit of Defendant and Validation Partners, which was an insider of Debtor.

110. At the time the Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of the Transfer and on the Petition Date.

111. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfer in good faith, for value, and without knowledge of its avoidability.

112. Based on the foregoing, Plaintiff may avoid the Transfer under 11 U.S.C. § 548(a)(1)(B).

113. Based on the foregoing, Plaintiff may recover and preserve the avoided Transfer from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

## Fifth Claim for Relief
## Disallowance of Claim
## 11 U.S.C. § 502(d)
## (Against all Defendants)

114. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 and realleges these paragraphs as though set forth in full herein.

115. Plaintiff alleges that Defendant and/or Doe Defendants may have a claim against the Estate.

116. Pursuant to 11 U.S.C. § 502(d), Plaintiff requests that any claim asserted by Defendant and/or Doe Defendants be disallowed unless or until the avoidable Transfer is repaid by Defendant and/or Doe Defendants.

## Prayer

WHEREFORE, Plaintiff prays for judgment against Defendant and Doe Defendants as follows:

**On the First Claim for Relief**

1. That the Transfer be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07;

16
COMPLAINT
4903-7445-3866,v.1

2. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

**On the Second Claim for Relief**

3. That the Transfer be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07;

4. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

**On the Third Claim for Relief**

5. That the Transfer be avoided under 11 U.S.C. § 548(a)(1)(A);

6. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

**On the Fourth Claim for Relief**

7. That the Transfer be avoided under 11 U.S.C. § 548(a)(1)(B);

8. That Plaintiff recover the avoided Transfer or a money judgment in an amount equal to the value of the avoided Transfer pursuant to 11 U.S.C. § 550;

**On the Fifth Claim for Relief**

9. That any claim of Defendant and/or Doe Defendants against the Estate be disallowed in its entirety unless or until Defendant and/or Doe Defendants timely repay the avoidable Transfer;

**On All Claims for Relief**

10. That Plaintiff only recover a single satisfaction of all avoided Transfers under 11 U.S.C. § 550(d);

11. That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

12. For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

13. For pre-judgment interest on all other claims at the maximum rate allowed by law;

///

14. For costs incurred by Plaintiff in prosecuting this action; and

15. For such other and further relief as the Court may deem just and proper.

DATED: September 18, 2025  MARSHACK HAYS WOOD LLP

By: */s/ Chad V. Haes*
  CHAD V. HAES
  Attorneys for Richard A. Marshack,
  Plaintiff and Trustee of The LPG Liquidation Trust

# Exhibit "1"

In re: The Litigation Practice Group PC  
Disbursement Details by Payee  
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Longclaw, Inc.



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Debit/Charge | Memo |
|---|---|---|---|---|---|---|
| Chase | Validation Partners LLC | 3097 | 12/31/2021 | 12/2/2021 | 325,000.00 | 12/02 Domestic Wire Transfer A/C: Longclaw, Inc. Sunrise FL 33323-2823 US Ref: Distribution |
| | | | | | **325,000.00** | |

1 of 1    DRAFT FORM - SUBJECT TO CHANGE    Payor Accounts: Validation Partners LLC

Exhibit "1"  
Page 19